O

**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 08-142 VAP (OPx)                              Date: November 23, 2009

Title:   RICK VALENTINE v. FIRST ADVANTAGE SAFERENT, INC., et al.
================================================================
PRESENT:          HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

  Jim Holmes, Relief                                      Phyllis Preston
  Courtroom Deputy                                        Court Reporter

ATTORNEYS PRESENT FOR                      ATTORNEYS PRESENT FOR
PLAINTIFFS:                                DEFENDANTS:

 Robert H. Stempler                           Samantha L. Southall

PROCEEDINGS:       MINUTE ORDER (1) DENYING PLAINTIFF'S MOTION FOR
                   PARTIAL SUMMARY JUDGMENT AND (2) GRANTING IN
                   PART AND DENYING IN PART DEFENDANT'S MOTION
                   FOR SUMMARY JUDGMENT (In Chambers)

      Plaintiff Rick Valentine's Motion for Partial Summary Judgment and Defendant First Advantage SafeRent's Motion for Summary Judgment came before the Court for a hearing on November 23, 2009.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court DENIES Plaintiff's Motion in its entirety, and GRANTS in part and DENIES in part Defendant's motion, as set forth below.

      In 2000, an unlawful detainer action was brought against Plaintiff Rick Valentine ("Plaintiff" or "Valentine"), and later dismissed.  This action was noted on a credit report issued by Defendant First Advantage SafeRent ("SafeRent") to Valentine's prospective landlord in 2006.  Valentine brought this action, alleging that the notation of the unlawful detainer action, and SafeRent's failure

to remedy the error, violated various sections of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("the FCRA").

Both parties now move for partial summary judgment.[1]

# I. BACKGROUND

**A.    Uncontroverted Facts**

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of this Motion.  See Local Rule 56-3.

   **1.    The 2000 UD Action**

In April 2000, Fred Folmer brought an unlawful detainer action against Valentine in California Superior Court ("the 2000 UD Action").  (Pl.'s Statement of Uncontroverted Facts and Law ("PSUF") ¶ 1; Def.'s Statement of Genuine Issues of Material Fact ("DSGI") ¶ 1; Def.'s Statement of Uncontroverted Facts and Law ("DSUF") ¶ 9; Pl.'s Statement of Genuine Issues of Material Fact ("PSGI") ¶ 9.)  That action was dismissed with prejudice in December 2000.  (PSUF ¶ 2; DSGI ¶ 2.)

   **2.    The U.D. Registry, Inc.**

At some point, SafeRent acquired another credit reporting agency, "The U.D. Registry, Inc." ("the U.D. Registry").  (PSUF ¶ 4; DSGI ¶ 4; Def.'s Ex. 3 ("Small Depo.") 53:3-6.)  In acquiring the U.D. Registry, SafeRent also acquired some of its data, though it is unclear how much of that data was retained.  (Small Depo. 68:14-21.)  Before SafeRent's acquisition of the company, Valentine had had several interactions with the U.D. Registry.

Throughout 2002, Valentine wrote several letters to the U.D. Registry, asking them to remove the 2000 UD Action from their records.  (Valentine Decl. ¶¶ 8, 10, 12, Exs. 2, 4, 6.)[2]  Valentine received multiple letters from the U.D. Registry in response.  (Valentine Decl. ¶¶ 9, 11,

---

[1] Although Defendant's motion is labeled "Motion for Summary Judgment," it does not seek complete resolution of Plaintiff's claims.  See Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 14 (". . . SafeRent is not moving for summary judgment as to the negligent violation of section 1681e(b) at this time. . . .").

[2] Defendant objects to the admission of these letters on the grounds that they are inadmissible hearsay.  (DSGI ¶ 6.)  The Court does not admit the letters for the truth of the matter asserted therein, but only as evidence that Valentine did indeed submit these letters.  As such, the hearsay rule does not apply.  See United States v. Dorsey, 418 F.3d 1038, 1044 (9th Cir. 2005) ("If the significance of an offered statement lies solely in the fact that it was made ... the statement is not hearsay.").  As equivalent to testimony of a witness with knowledge, the statements in Valentine's declaration that these are "true and correct copies" of letters he sent are sufficient "to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a),(b).

Exs. 3, 5.)³ While the dispute was continuing, in 2003, Valentine received a copy of a credit report, dated January 28, 2003, from the property manager of an apartment he sought to rent in Corona, California. (Valentine Decl. ¶ 15, Ex. 8.)⁴ That credit report reflected the 2000 UD Action as filed. (Id.)

The unsuccessful resolution of the dispute led Valentine to file a small claims action in the California Superior Court for Los Angeles County against the U.D. Registry for violating the California Fair Credit Reporting Act, Cal. Civ. Code § 1785 on November 1, 2003. (PSUF ¶ 8; DSGI ¶ 8.) The court entered judgment in that case in Valentine's favor and against the U.D. Registry on April 27, 2004. (PSUF ¶ 9; DSGI ¶ 9; Def.'s Ex. 7 at 188.)

### 3. The 2006 Report and Running Springs Application

On September 9, 2006, Valentine submitted to Coldwell Banker The Running Springs Realty ("Running Springs Realty") an application to rent a unit in Running Springs, California. (DSUF ¶ 1; PSGI ¶ 1; Def.'s Ex. 1 at pp. 9-12.)

In connection with this application, Running Springs Realty requested a "consumer file" from SafeRent. (DSUF ¶ 2; PSGI ¶ 2.) On September 10, 2006, SafeRent sent a report to Running Springs Realty ("the 2006 Report"), which indicated that the 2000 UD Action had been filed without noting the resolution of that case. (PSUF ¶ 10; DSGI ¶ 10; Def.'s Ex. 1 at 14-15.) During the time in question, SafeRent obtained court records from San Bernardino County, including the information on the 2000 UD Action, from an independent vendor named "Hurtado." (Small Depo.

---

³ Defendant objects to the admission of these letters on the grounds that they have not been authenticated and that they are inadmissible hearsay. As with the letters Valentine sent to U.D. Registry, the Court does not admit the letters for the truth of the matter asserted therein, but only as evidence that these letters were sent, and thus the hearsay rule does not apply. The Court also finds Valentine's statements that these are "true and correct copies" of the letters he received sufficient for authentication under Fed. R. Evid. 901(a).

⁴ SafeRent objects to the admission of this report as lacking authentication and inadmissible hearsay. The Court agrees in part and only admits the report for the limited purposes referenced above. Under Fed. R. Evid. 901, Valentine's statement that the exhibit is a true copy of that which *he* received from his property manager is sufficient to authenticate the document. Valentine has no personal knowledge of who provided the credit report to the property manager, however, and thus cannot authenticate the document as one issued by the U.D. Registry. The deposition testimony of Robyn Small agreeing that the report "appeared to be" prepared by the U.D. Registry also is insufficient to authenticate the document, since Small has no personal knowledge about the report, and in fact had no connection to the U.D. Registry at the time the report was generated.

As the Court does not consider the contents of the exhibit for the truth of the matter asserted therein, it is not inadmissible hearsay.

97:13-20, 103:23-104:2.)⁵  The information was not gleaned from data obtained in SafeRent's acquisition of UD Registry.  (Small Depo. 68:23-69:8.)⁶

Despite the reference to the 2000 UD Action, Valentine's rental application was approved. (DSUF ¶ 7; PSGI ¶ 7; Valentine Decl. ¶ 24.)   An agent at Running Springs Realty made a notation next to the listing of the 2000 UD Action in the 2006 Report, stating "Error - has letter from an attny will bring in copy."  (DSUF ¶ 7; PSGI ¶ 7; Def.'s Ex. 1 at 14.)  This notation was followed by  "- Never brought in letter."  (Def.'s Ex. 1 at 14.)

Due to issues related to his receipt of federal housing assistance, Valentine nonetheless decided not to rent the property at issue.  (DSUF ¶ 8; PSGI ¶ 8; Def.'s Ex. 1 at 8, 13.)

### 4. Valentine's Requests for Reinvestigation

SafeRent received no requests for Valentine's consumer file between September 10, 2006 and March 2007.  (DSUF ¶ 12; PSGI ¶ 12.)  On March 20, 2007, Valentine sent an electronic message ("email") to SafeRent disputing the inclusion of the 2006 Report in his file.  (Def.'s Ex. 6.)

In processing "reinvestigation requests," SafeRent requires "identifying information" from a consumer.  (Small Depo. 112:12-14.)  One piece of "identifying information" it requires is an original signature.  (Small Depo. 209:16-23.)  SafeRent's former Customer Relations Director, Robyn Small, testified that SafeRent requires the signature as part of its attempt to comply with the FCRA's requirement that it "take reasonable steps to ensure the person's identity."  (Small Depo. 212:15-21.)⁷  According to SafeRent, the signature serves as an affirmation of the consumer's identity and that the information contained in the request is true and correct to the best of the consumer's knowledge, under penalty of law.  (Small Depo. 210:24-211:7.)

SafeRent will investigate the request whether or not it has received this information, and if it finds the information in its files is inaccurate, will update its files.  (Small Depo. 113:4-10, 115:3; 114:8-115:3.)  It will not share the results of the investigation with the consumer in such a case.

---

⁵ Valentine characterizes this fact as disputed based on general language in Small's deposition testimony which explained that records are obtained through different sources.  (PSGI ¶ 5, citing Small Depo. at 97:7-9.)  However, Small's testimony is unequivocal that records from San Bernardino County courts in the relevant time period were obtained from Hurtado.  Valentine also disputes whether "Defendant may rely on Hurtado."  (PSGI ¶ 5.)  In deeming the fact that the records were obtained via Hurtado uncontroverted, the Court makes no ruling as to whether reliance on Hurtado was appropriate.

⁶ Valentine disputes, but does not succeed in controverting, this fact.  (PSGI ¶ 6, citing Small Depo. 50:5-23, 67:18-68:1.)

⁷ Valentine disputes this fact, but the portion of Small's deposition testimony he cites does not support a finding it is controverted.  (PSGI ¶ 22, citing Small Depo. 200:24-201:16.)

(Small Depo. 113:22-114:6.)  Rather, it requests the missing information from the consumer (Small Depo. 112:22-113:10, 116:12:17.)[8]

In the March 20, 2007 email Valentine sent to SafeRent's Consumer Relations department, he threatened to sue SafeRent if it did not remove any and all references to the 2000 UD Action from his file.  (Def.'s Ex. 6.)  He also indicated he was sending a copy of the email via postal mail.  (Id.)  Defendant responded to the email by noting that reinvestigations could not be initiated via email, but only via written request.  (PSUF ¶ 13; DSGI ¶ 13.)

SafeRent received a copy of the email, sent via U.S. Mail to "First Advantage Safe Rent" in Rockville, Maryland, on March 23, 2007.  (PSUF ¶ 11; DSGI ¶ 11; Def.'s Ex. 7.)  Along with the copy of the email, the mailing included a copy of the 2004 small claims judgment against the U.D. Registry (Def.'s Ex. 7 at 188) and a letter, dated January 2001 and addressed to three other credit agencies, purportedly from the attorney representing the landlord in the 2000 UD Action, indicating that that action had been filed in error and requesting all references to the action be removed from Valentine's credit history.  (Def.'s Ex. 7 at 189.)

Upon receipt of the mailing, a Consumer Relations employee of SafeRent created a record noting it had received the reinvestigation request.  (DSUF ¶ 23; PSGI ¶ 23; Def.'s Ex. 8.)  That same day, a SafeRent employee searched SafeRent's database for the 2000 UD Action, or any other court records for Valentine, but found nothing.  (DSUF ¶ 24; PSGI ¶ 24; Def.'s Ex. 9.)

Under the FCRA, a consumer credit report may not include any civil suits or judgments that predate the report by more than seven years.  15 U.S.C. § 1681c(a)(2).  In light of this limitation, it is SafeRent's policy to purge all adverse actions from a consumer's file six years and ten months after the actions are initiated.  (Small Depo. 176:4-15.)

On April 18, 2007, Valentine called SafeRent to investigate the status of the reinvestigation, and spoke with SafeRent Customer Relations Director Robyn Small.  (Def.'s Ex. 10; Valentine Decl. ¶ 29.)  The parties dispute what was said during this telephone conversation.

On April 23, 2007, a SafeRent representative again searched its records and found no reference to the 2000 UD Action.  (DSUF ¶ 28; PSGI ¶ 28; Def.'s Ex. 11.)  The representative noted this in SafeRent's records, and also noted that the Plaintiff's March mailing had contained neither an original signature nor a Social Security number.  (Def.'s Ex. 11.)  SafeRent then sent Valentine a form response indicating that his request for reinvestigation could not be processed because it did not contain an original signature, and asking Valentine to complete, sign, and return

---

[8] Valentine labels this fact as disputed, but the evidence cited only establishes a dispute as to whether SmartRent was actually missing identifying information in this case.  See PSGI ¶ 20, citing Valentine Supp. Decl. ¶¶ 7-9.

an attached form. (Def.'s Exs. 11, 12.)[9]  The letter also contained a summary of Plaintiff's rights under state and federal law. (DSUF ¶ 34; PSUF ¶ 34; Def.'s Ex. 12 at 205-211.)  According to Robyn Small, the company did not tell Valentine that the case was not appearing in its records at this time because of the lack of identifying information.  At her deposition, she testified:

> We didn't know who we were dealing with.  We didn't have any identification.  We didn't have any ID.  We didn't have an original signature.  We didn't have a Social Security number.  No matching address with the case number.  Nothing . . .  We don't typically communicate anything to someone until we know who we're dealing with because we don't want to give them even a tidbit of information that they may not already have unless we're sure that we're dealing with the person that they say they are.

(Small Depo. 161:6-162:1.)

On May 16, 2007, SafeRent received another written reinvestigation request from Valentine. (DSUF ¶ 36; PSGI ¶ 36; Def.'s Ex. 13, 14.)  In the cover letter, Valentine referred to a telephone conversation with "Robin Smalls," and protested the need to fill out any SafeRent forms. (Def.'s Ex. 14 at 219; Valentine Decl. Ex. 12 at 54.)  Valentine also indicated that SafeRent's "unlawful reporting" was "prolong[ing] the hurt and agony placed on [his] family. . . ." (Id.)  He testified, "As I explained to Robin Smalls, we are living in a house that is going to be red tagged. We cannot find another place because of your unlawful reporting." (Id.)  Valentine also included copies of the items he submitted in March 2007, as well as a copy of the form response letter SafeRent had sent him in April, requesting an original signature, and completed copies of forms that SafeRent had sent to him. (Def.'s Ex. 14; Valentine Decl. Ex. 12.)

On June 13, 2007, a SafeRent representative ran another search in its records for the 2000 UD Action, and was unable to find it. (DSUF ¶ 38; Def.'s Ex. 15.)[10]  The representative noted that the May reinvestigation request also lacked an original signature, and sent Valentine another form letter indicating his original signature was required, along with the same supplemental paperwork

---

[9] Although Valentine has labeled this fact as disputed, (PSGI ¶ 33), the evidence he points to, Valentine Supp. Decl. ¶¶ 7-9, in no way controverts the evidence produced by Defendant. These paragraphs in fact acknowledge that SafeRent "responded by letter or by leaving me phone messages that they cannot accept my dispute, because it lacked my original signature. . . ." (Id. at ¶ 7.)

[10] Plaintiff has also labeled this fact in dispute, but has cited no evidence that controverts that set forward by Defendant.  He only cites the same paragraphs of his own supplemental declaration and portion of Robyn Small's deposition testimony he has cited to "dispute" several other facts noted above. (PSGI ¶ 38, citing Valentine Supp. Decl. ¶¶ 4, 7-9 and Small Depo. 118:9-19.)  The cited portion of the Small deposition testimony directly supports Defendant's uncontroverted fact.

sent to him in April. (Def.'s Exs. 15-16.)[11]

On June 19, 2007, Small called Valentine and left him a message indicating that SafeRent could not process his request since it lacked an original signature. (Valentine Decl. ¶ 33; Small Depo. 223:24-224:8, 225:8-11.)[12]

### 5. The Credit Report Request

On June 27, 2007, Valentine sent a letter via U.S. Mail, addressed to "First Advantage" at a post office box in Atlanta, Georgia, requesting a copy of his "free annual credit report." (Pl.'s Ex. 16; Def.'s Ex. 8.) The letter was received in Atlanta and signed for by a Jenny or Jerry Ray on July 1 or July 2, 2007. (Def.'s Ex. 8.)

The address to which Valentine sent his request is the same as the address for the "Annual Credit Report Request Service," established by the three major nationwide credit bureaus (Equifax, Experian, and TransUnion) in compliance with the Fair and Accurate Credit Transactions Act of 2003. (Def.'s Ex. 21.) SafeRent does not have an office in Atlanta, nor does it have any record of this letter. (DSUF ¶¶ 45, 46; PSGI ¶¶ 45, 46.) Valentine received no response to this letter. (Valentine Decl. ¶ 37.)

### 6. Damages

There is no evidence that Plaintiff ever had a rental application denied based on a SafeRent report. Although Valentine claims he "felt it was futile to submit any more rental applications" after he found out that the 2000 UD Action was being reported, (Valentine Decl. ¶ 24), the only evidence of a SafeRent-produced report including the 2000 UD Action, in connection with the application for the apartment in Running Springs, shows that the listing of the 2000 UD Action had no impact on Valentine's ability to rent that unit.[13]

Valentine has made numerous statements regarding the effects of these events on his psyche. He states that the discovery that the UD Action was inaccurately reported on the September 2006 Report "upset" and "embarasssed" him. (Valentine Supp. Decl. ¶ 3.) He has also stated that SafeRent's failure to accept his notices disputes via email made him "angry, depressed, worried, and frustrated," since he is "on a tight budget and every dollar counts" and

---

[11] Citing the same irrelevant paragraphs of his declaration and the section of Small's deposition testimony, Plaintiff attempts to dispute this fact. See PSGI ¶¶ 40-41. The evidence cited in no way contradicts the evidence cited by Defendant and the Court.

[12] Defendant labels this fact disputed, but the cited evidence does not indicate any dispute of fact. (DSGI ¶ 18, citing Small Depo. 223:24-224:12.)

[13] Several witnesses have stated that Valentine told them that the listing of the 2000 UD Action meant he would not be able to rent any other apartment. See, e.g., C. Valentine Decl. ¶ 4; Weyhgandt Decl. ¶ 3. This evidence is inadmissible hearsay. See Fed. R. Evid. 801(c).

letters sent by Certified Mail cost "about $5.00 each." (Valentine Supp. Decl. ¶ 6.) Valentine has stated that SafeRent's responses to his reinvestigation requests concerning the lack of an original signature made him "feel helpless, out of control, and frustrated." (Valentine Supp. Decl. ¶ 7, see also ¶ 9.) "Going round and round" with SafeRent caused Valentine to "lose hours of sleep on different nights," making him "so tired and depressed[] that [he] did not leave the house, which caused [him] to miss going to church . . . ." (Valentine Supp. Decl. ¶ 8.) Other witnesses have testified to observing Valentine's stress levels and depression. (C. Valentine Decl. ¶¶ 5, 6; Weyhgandt Decl. ¶ 4.)[14]

Valentine also has presented significant testimonial evidence that he was dissatisfied with the house he was living in at the time of these events, in which he "felt like a prisoner." (Valentine Supp. Decl. ¶ 11.) He has stated that it was "a terrible place" and that he "wanted very much to move out" as "there was no air conditioner, the heater did not work, the plumbing had many problems, and the walls had mold inside of them." (Id.) The conditions in that apartment have been collaborated by other witnesses. (C. Valentine Decl. ¶ 3; Weyhgandt Decl. ¶ 2.)

## B. Disputed Facts

The Court finds the following facts to be in dispute.

The parties dispute whether or not either Valentine's March 2007 or May 2007 reinvestigation request included an original signature, or only a photocopy of Valentine's signature. (DSUF ¶¶ 37, 42; PSGI ¶¶ 37, 42; Small Depo. 118:21-119:4, 219:3-24; Valentine Supp. Decl. ¶ 7.)

As noted above, the parties also dispute the content of an April 2007 telephone call between Small and Valentine. Valentine claims that Small told him that they could not launch an investigation until he completed certain SafeRent forms and provided an original signature. (Valentine Decl. ¶ 29.) SafeRent, and Small, maintain that Small only told him that the reinvestigation was in progress. (Def.'s Ex. 10; Small Depo. 167:8-11.)

## C. Procedural History

Plaintiff filed this action on February 4, 2008. The Court granted leave to file a First Amended Complaint ("FAC") on September 23, 2008, and Plaintiff did so on September 26, 2008. In the First Amended Complaint, Plaintiff includes only one "claim," for violation of the FCRA. This claim is premised on three different alleged violations of the FCRA, though: (1) Defendant's reporting of "false, inaccurate, incomplete, and obsolete information concerning Plaintiff," in violation of 15 U.S.C. § 1681e(b) (FAC ¶ 43); (2) Defendant's failure to "properly reinvestigate or

---

[14] The Court does not consider the statements of these witnesses as to why Valentine was stressed or depressed, as they are based solely on hearsay. Fed. R. Evid. 801(c). The witnesses explicitly indicate their knowledge as to the cause of the stress came solely from Valentine's statements. See, e.g., Weyhgandt Decl. ¶ 3 (stating that Valentine told him he was tired and stressed because he was not "able to move out and find another place to rent").

respond to Plaintiff's disputes" as to the accuracy of the report, in violation of 15 U.S.C. § 1681i (FAC ¶ 44); and (3) Defendant's refusal "to provide Plaintiff with a copy of his credit report and the summary of rights," in violation of 15 U.S.C. § 1681g (FAC ¶ 45).

The FAC includes two different theories of recovery for each of these violations. To the extent the violations were *willful*, Valentine seeks to recover under FCRA § 616, 15 U.S.C. § 1681n, which authorizes actual damages or a civil penalty, punitive damages, and attorney's fees and costs as a remedy. (FAC p. 8.) He also seeks injunctive relief for these willful violations. (Id.) To the extent the violations were merely *negligent*, Valentine seeks to recover under FCRA § 617, 15 U.S.C. § 1681o, which only authorizes actual damages and attorney's fees and costs. (Id.)

On October 30, 2009, Defendant filed a Motion for Summary Judgment ("DMSJ"), seeking summary judgment as to (1) any and all claims of *willful* violation of the FCRA; (2) whether Plaintiff suffered any actual damages as a result of the alleged violations; and (3) whether Plaintiff is entitled to injunctive relief. Plaintiff filed a timely opposition to this motion ("Pl.'s Opp'n") and Defendant filed a reply ("Def.'s Reply").

On November 2, 2009, Plaintiff filed a Motion for Partial Summary Judgment ("PMSJ") solely on the issue of whether Defendant "violated" each of the three provisions, with no determination as whether the violations were willful or merely negligent. Defendant filed a timely opposition to this motion ("Def.'s Opp'n") and Plaintiff filed a reply ("Pl.'s Reply").

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. See also

William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. DISCUSSION
**A.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff argues he is entitled to summary judgment as to whether SafeRent violated each of the three provisions of the FCRA. As explained below, the Court finds genuine issues of material fact exist as to whether SafeRent violated each of the three statutory provisions, and thus Plaintiff's Motion for Partial Summary Judgment is DENIED in its entirety.

**1.     Violation of 15 U.S.C. § 1681e(b)**

Section 1681e(b) of the FCRA provides: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681(e)(b).

The determination whether or not a consumer reporting agency violated § 1681(e)(b) is a two-step process. First, to state a prima facie case, "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995). <u>See also</u> <u>Dennis v. BEH-1, LLC</u>, 520 F.3d 1066, 1067 (9th Cir. 2008) (describing "prima facie showing of inaccurate reporting"). The burden then shifts to the agency to establish that the "inaccurate report was generated despite the agency's following reasonable procedures." <u>Id.</u>

The sole report at issue prepared by SafeRent is the September 2006 Report. Valentine claims that this report contained an inaccuracy, i.e., it listed the 2000 UD Action as "'CASE FILED,' without noting the fact that this matter had been dismissed, settled, or disputed." (Pl.'s Mem. in Supp. of PMSJ ("Pl.'s Mem.") at 6.)

It is not clear as a matter of law, though, that the omission of the subsequent history was an "inaccuracy" under the statute. Since there is no dispute that the 2000 UD Action was indeed "filed," the information included in the record was technically correct.

The facts here are thus very different from those in <u>Dennis</u>, upon which Valentine heavily relies. There, the Ninth Circuit held that a notation stating there was a "Civil claim judgment" against a consumer was "inaccurate" when the case actually had been dismissed without prejudice in the consumer's favor. 520 F.2d at 1069. As the Ninth Circuit explained, "[b]ecause

the case against Dennis was dismissed, there could have been no 'Civil claim judgment' against him." Id.  Here, though, no such technically incorrect statement was included in the September 2006 Report.

A technically correct report can still be "inaccurate" under § 1681e(b), though.  The leading case on this issue comes from the Court of Appeals for the D.C. Circuit, Koropoulos v. Credit Bureau, Inc., 734 F.2d 37 (D.C. Cir. 1984.)  Relying on a close reading of the various sections of the FCRA and its legislative history, the court there held that § 1681e(b) makes a credit reporting agency liable for "reports containing factually correct information that nonetheless mislead their readers."  734 F.2d at 41.  See also Yourke v. Experian Info. Solutions, Inc., No. C 06-2370 CW, 2007 WL 1795705, at *4 (N.D. Cal. Jun. 20, 2007) (adopting Koropoulos); Akselrod v. Chex Systems, Inc., No. CV 05-3680-GPS, 2005 WL 1492390, at *4 (C.D. Cal. June 6, 2005) (same).  The Ninth Circuit recently adopted the reasoning in Koropolous in defining an "inaccuracy" under another provision of the FCRA, 15 U.S.C. § 1681s-2, which defines the duties of "furnishers of information" to a consumer reporting agency.  Gorman v. Wolpoff & Abramson, LLP, --- F.3d ----, No. 06-17226, 2009 WL 3365928 (9th Cir. Oct. 21, 2009), amended op., reh'g and reh'g en banc denied.  There, the court held that the failure to note the disputed nature of a debt is actionable where "omission of the dispute was 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect.'"  Id., 2009 WL 3365928 at *12, quoting Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 150 (4th Cir. 2008) (alterations in original).

Whether an omission was "misleading in such a way and to such an extent that it can be expected to have an adverse effect," and thus is an "inaccuracy," is generally a question for the jury.  See Saunders, 526 F.3d at 150 (affirming jury verdict as to misleading nature of omission as reasonable); Koropoulos, 734 F.2d at 42 (reversing grant of summary judgment and finding issue to be one of factual dispute); Yourke, 2007 WL 1795705, at *4 (finding issue of material fact and denying summary judgment).  Here, there is no evidence that the omission of the resolution of the 2000 UD Action actually misled anyone, nor is the omission on its face so misleading that "there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250.  As the question of whether the omission qualifies as an "inaccuracy" is both a legal question and one of disputed fact, the Court finds Plaintiff has failed to meet his burden.

Since Plaintiff has failed to establish his prima facie case, the Court need not address the reasonableness of SafeRent's procedures.  It does note the Ninth Circuit's rejoinder that "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."  Guimond, 45 F.3d at 1333.  The Court thus DENIES Plaintiff's Motion for Partial Summary Judgment as to 15 U.S.C. § 1681e(B).

### 2. Violation of 15 U.S.C. § 1681i

Upon notification by a consumer of a dispute as to information contained in his or her file, section 1681i requires a consumer reporting agency to:

free of charge, conduct a reasonable reinvestigation to determine whether the

> disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).[15]  In the memorandum in support of his summary judgment motion, Valentine claims that SafeRent's failure to send him the results of any reinvestigation, combined with its "sham reasoning, such as requiring an 'original signature'" establish a violation of the statute as a matter of law.

Any argument that SafeRent's requirement of an original signature was a "sham" cannot be used to gain summary judgment.  The parties debate whether the original signature was ever provided, and there is no evidence that shows any improper motive for the signature requirement.  Whether or not the signature requirement was a sham cannot be resolved in light of this dispute.

Valentine "clarifies" his argument in his Reply Brief.  First he argues, for the first time, that SafeRent's policies of requiring written requests, as opposed to emails, and original signatures are de facto violations of § 1681i.  Second, he argues that SafeRent's reinvestigation was neither a reinvestigation nor reasonable under § 1681i.

"'It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than [those that were] presented in the moving papers.'" Daghlian v. DeVry University, Inc., 461 F. Supp.2d 1121, 1143 n. 37 (C.D. Cal. 2006), quoting William W. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, Federal Civil Procedure Before Trial, § 12:107 (The Rutter Group 2005) (alterations in original).  Neither Valentine's motion nor his memorandum in support of that motion made any reference to the policy refusing to open reinvestigations based on email requests.  Considering that argument without giving SafeRent the opportunity to respond would be unduly prejudicial, and thus the Court declines to address it.  Since the moving papers did at least refer to the original signature requirement and reasonableness of the reinvestigation, the Court will consider those arguments.

### (a)    The Original Signature Requirement

Valentine repeatedly argues that SafeRent violates § 1681i by requiring an original signature to commence a reinvestigation.  But although SafeRent does require an original signature to *share* the results of a reinvestigation, there is evidence that suggests that an original

---

[15]  The statute also requires that a consumer be provided with written notice of the results of a reinvestigation not later than five business days after the completion of the reinvestigation.  15 U.S.C. § 1681i(6)(A).  For the first time, in his Reply Brief, Plaintiff argues Defendant has violated this provision.  (Pl.'s Reply at 10.)  Since the consideration of this argument "would raise serious questions of fairness because the non-moving party would have had no chance to respond to contentions raised initially in reply," Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1514 n.6 (9th Cir. 1994), the Court declines to address it.

signature is not actually required to initiate a reinvestigation. In this case, various SafeRent employees did "investigate" the disputed item, despite their position that Valentine never provided an original signature. (Def.'s Exs. 9, 11, 15.) Nonetheless, Valentine argues that SafeRent's form response letters to him, noting his request "could not be processed" without his signature, establish that no investigation occurred. (Pl.'s Reply at 7.) The quoted language does not contradict the evidence showing several searches of the SafeRent database, though.

Whether the amount of investigation conducted without the original signature was sufficient is a question of reasonableness, and is discussed below. There is insufficient evidence to conclude that no reinvestigation took place due to the purported lack of an original signature, however.

### (b) The Sufficiency of SafeRent's investigation

Valentine argues that SafeRent was obligated to check the actual court record in its reinvestigation, which it failed to do. While Valentine claims that this shows "the action taken by Defendant was not a reinvestigation," the argument is better construed as a challenge to the reasonableness of the reinvestigation.

"Summary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the reasonable man standard is thought ordinarily to preclude summary judgment. However, summary judgment is not precluded altogether on questions of reasonableness. It is appropriate when only one conclusion about the conduct's reasonableness is possible." Gorman, 2009 WL 3365928 at *7 (citations omitted).

The Court cannot conclude that the only possible conclusion about the reinvestigation is that it was unreasonable. The statute requires "a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." If, as SafeRent argues here, at the time of the reinvestigation, the disputed item was *already deleted from the file* pursuant to its policy of periodic data purges (Small Depo. 175:15-177:2), it is not unreasonable as a matter of law not to conduct further inquiries.[16] Although Valentine disputes whether the 2000 UD Action actually was deleted at the time of the search, he produces no evidence to demonstrate that the 2000 UD Action was still in its file. Even if he did, however, that would merely create an issue of material fact, and summary judgment would be inappropriate. Therefore, the Court DENIES Plaintiff's Motion for Partial Summary Judgment as to 15 U.S.C. § 1681i.

### 3. Violation of 15 U.S.C. § 1681g

---

[16] Valentine points to language in Dennis to suggest that a reasonable reinvestigation will *always* require reexamination of the court file. (Reply at 9.) A close reading of that case reveals no such holding, but rather only that the failure to delete a disputed item from a file when there are contrary items in the court file is proof of an unreasonable reinvestigation. See 520 F.3d at 1071.

Section 1681(g) requires a consumer reporting agency to provide a credit report "upon request." Inherent in this language is a requirement that the request, at the least, be sent to the consumer reporting agency at issue.

There is no dispute that Valentine mailed a request for his credit report to an Atlanta post office box (DSUF ¶ 44; PSGI ¶ 44), that SafeRent has no office in Atlanta (DSUF ¶ 45; PSGI ¶ 45), and that SafeRent has no record of ever receiving this request (DSUF ¶ 46; PSGI ¶ 46). There is evidence in the record that suggests Valentine's request was sent to a centralized credit reporting service operated by non-party credit bureaus. (Def.'s Ex. 21.)

This evidence demonstrates there is, at least, a dispute of fact as to whether Valentine actually requested a credit report *from SafeRent*. Therefore, the Court DENIES Valentine's Motion for Partial Summary Judgment as to 15 U.S.C. § 1681g.

**B.    Defendant's Motion for Summary Judgment**

SafeRent moves for summary judgment on the issues of liability under § 1681n, which requires a willful violation fo the FCRA, as well as on issues relating to the availability of certain remedies Valentine seeks. For the reasons below, the Court GRANTS in part and DENIES in part SafeRent's motion.

   **1.    Willfulness**

SafeRent first moves for summary judgment on the issue of whether any of its alleged violations of the FCRA were "willful" in the context of 15 U.S.C. § 1681n. A "willful" violation under § 1681n is one that is either a knowing or reckless violation of the statute. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-59 (2007).

      **a)    The Willfulness of any § 1681e(b) Violation**

Plaintiff alleges only one violation of § 1681e(b), the inaccurate September 2006 Report. As noted above, it is a matter of disputed fact whether there was a violation of this statutory provision. To find liability at all, a finder of fact must first find an inaccuracy in the credit report at issue, and then conclude that the agency did not follow "reasonable procedures." Guimond, 45 F.3d at 1333. The Court has not ruled on the presence or absence of either of these elements.

Assuming for the purposes of this motion that the statute was indeed violated, Valentine can only recover under § 1681n if SafeRent either knew of the inaccuracy or "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69.

Valentine does not contend that SafeRent knowingly omitted information about the 2000 UD Action from the September 2006 Report. Instead, he argues that there is sufficient evidence for a jury to find that the omission met the Safeco standard of recklessness. The parties each rely on the same facts: in preparing the September 2006 Report, SafeRent did not review the

court record in the 2000 UD Action, but instead relied upon information provided to it by its vendor, Hurtado. (Pl.'s Mem. at 14-15; Def.'s Opp'n at 7.) However, Valentine argues that SafeRent's reliance on Hurtado and failure to inspect the court record itself could support a finding of willfulness, while SafeRent claims its reliance on Hurtado bars such a finding as a matter of law.

In Dennis, the Ninth Circuit held that a consumer reporting agency does not meet its obligation to conduct a reasonable reinvestigation under 15 U.S.C. § 1681i by delegating the reinvestigation to a third party if that third party made an error that the consumer reporting agency could have caught if it had reviewed the court file. 520 F.3d at 1070. Nevertheless, the Ninth Circuit explicitly refused to determine whether the violation of section 1681i was willful or merely negligent in Dennis. 520 F.3d at 1071.

SafeRent argues, however, that its interpretation that "section 1681e(b) permitted consumer reporting agencies to rely upon information from trusted vendors" was reasonable at the time of the September 2006 Report, before the decision in Dennis. This assertion is supported by the Federal Trade Commission ("FTC") Commentary on this section of the FCRA:

> If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate.

16 C.F.R. Pt. 600, App. at ¶ 5, § 607(3).[17]

The Ninth Circuit's opinion in Dennis adopts an interpretation of the statute that differs from that of the FTC Commentary. In determining whether SafeRent can escape total liability for violating § 1681i by relying on Hurtado, the Court is bound by the Ninth Circuit, not the interpretative commentary. Nevertheless, the interpretative rule still is relevant to the issue of willfulness. If SafeRent acted in a manner that the FTC Commentary would consider lawful, it cannot be said that SafeRent "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69.

The FTC Commentary only excuses reliance on "consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face," however. 10

---

[17] The FTC Commentary "does not have the force or effect of regulations or statutory provisions." 16 C.F.R. Pt. 600, App at ¶ 1. Hence, a court may reject the FTC's interpretation of the statute after weighing "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Community Hosp. of Monterey Peninsula v. Thompson, 323 F.3d 782, 792 (9th Cir. 2003), quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

C.F.R. Pt. 600, App. at ¶ 5, § 607(3). SafeRent provides no evidence on the record as to the reputation of Hurtado or the credibility of its work. Therefore, the Court cannot conclude that SafeRent's actions were in accordance with the FTC's interpretation of the statute. This lack of evidence also prevents the Court from finding, irrespective of the FTC Commentary, that no reasonable juror could find SafeRent was reckless when it relied on Hurtado without verifying the court files. Therefore, it DENIES SafeRent's motion for summary judgment on this issue.

### b) The Willfulness of any § 1681i Violation

SafeRent contends there is no evidence that could support a finding that any failure to conduct a "reasonable reinvestigation" was willful. As noted above, there are several genuine issues of material fact as to whether SafeRent conducted a "reasonable reinvestigation" in this case. If any possible resolution of these issues could support a jury finding that the lack of a reasonable reinvestigation was willful, summary judgment is barred.

Here, Valentine has submitted admissible evidence - his declaration - maintaining he sent his original signature to SafeRent. Although the latter disputes this, if a fact-finder found in Valentine's favor, and further found that SafeRent was in possession of Valentine's original signature, as he maintains (Valentine Supp. Decl. ¶ 7), and that SafeRent nonetheless did not complete a "reasonable reinvestigation" on these grounds, a reasonable jury could find the lack of a reasonable reinvestigation willful.

Accordingly, the Court DENIES SafeRent's motion for partial summary judgment as to a willful violation of § 1681i.

### c) The Willfulness of any § 1681g Violation

There is no evidence that suggests SafeRent ever received Valentine's credit report request. Thus, there is no evidence that SafeRent either knowingly or recklessly failed to respond. The Court thus GRANTS partial summary judgment to SafeRent on Valentine's claim of willful violation of § 1681g.

### 2. Actual Damages

SafeRent argues that Valentine cannot establish he is entitled to any actual damages, even if he establishes violations of the FCRA. Valentine responds that he has produced sufficient evidence of emotional distress to create a question of fact.

The parties agree that emotional distress can give rise to actual damages under the FCRA, whether or not a plaintiff actually is denied credit as a result of the FCRA violation. See Def.'s Mem. at 22; Pl.'s Opp'n at 21; Dennis, 520 F.3d at 1069; Guimond, 45 F.3d at 1332-33. SafeRent contends, though, that Valentine's emotional distress evidence is insufficient since it is not accompanied by "actual or genuine injury."

The Ninth Circuit has not specifically addressed the requirements for recovering actual damages based on emotional distress under the FCRA. District courts within the Circuit have taken two different approaches.

In one line of cases, district courts, including the only one in this district to consider the issue, have found that no "objective evidence" is required, relying on Ninth Circuit precedent which generally has held that, to recover for emotional distress, "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in the Ninth Circuit, or the Supreme Court." Acton v. Bank One Corp., 293 F. Supp. 2d 1092, 1100 (D. Ariz. 2003), quoting Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir. 2003). See also Saenz v. Trans Union, LLC, 621 F. Supp. 2d 1074, 1085 (D. Or. 2007); Lambert v. Beneficial Mortg. Corp., No. 3:05-cv-05468-RBL, 2007 WL 1309542, at *7 (W.D. Wash. May 4, 2007); Nelson v. Equifax Information Services, LLC, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007); Waddell v. Equifax Information Services, LLC, No. CV-05-0092-PHX-DGC, 2006 WL 2640557, at *4 (D. Ariz. Sept. 14, 2006). Applying this standard, several of these courts have found that a plaintiff's own testimony as to his emotional distress is alone sufficient to defeat summary judgment or support a jury award. See Acton, 293 F. Supp. 2d at 1101; Nelson, 522 F. Supp. 2d at 1239; Waddell, 2006 WL 2640557, at *4.

In a second line of cases, relying on Fifth Circuit precedent, district courts have held that "a plaintiff must support a claim for damages based on emotional distress with something more than his or her own conclusory allegations." Myers v. Bennett Law Offices, 238 F. Supp. 2d 1196, 1206 (D. Nev. 2002), citing Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001); see also Drew v. Equifax Information Services, LLC, No. C 07-0726 SI, 2009 WL 595459 (N.D. Cal. Mar. 5, 2009); Costa v. National Action Financial Services, 634 F. Supp. 2d 1069, 1078 (E.D. Cal. 2007). Such "[s]upport can come from the surrounding circumstances or other evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." Myers, id.

The Court need not determine which of these two approaches is correct, as Valentine has produced sufficient evidence to avoid summary judgment under either. Although not extremely detailed, Valentine's own statements as to lost sleep and depression (Valentine Supp. Decl. ¶¶ 3, 6-9), have been corroborated by his son and his friend (C. Valentine Decl. ¶¶ 3-4; Weyhgandt Decl. ¶¶ 5-6). These "observations of others" are all the more stringent Myers standard requires. The existence of other stressors in his life which could have contributed to this emotional distress does not, as SafeRent suggests, Def.'s Mem. at 23-24, preclude a reasonable finder of fact from finding that Valentine experienced emotional distress as a result of the alleged statutory violations.

Therefore, the Court DENIES SafeRent's request for partial summary judgment as to the issue of actual damages.

### 3. Injunctive Relief
In the FAC, Valentine requests unspecified "injunctive relief" under 15 U.S.C. § 1681n.

(FAC p. 8.)  SafeRent argues both that (1) as a matter of law, injunctive relief is not available to private litigants under that statute, and (2) even if it were, there is no possible injunctive relief Valentine could be entitled to, since the 2000 UD Action has already been purged from its files.

There is a split of authority over whether injunctive relief is available under § 1681n. Compare Ramirez v. MGM Mirage, Inc., 524 F. Supp.2d 1226, 1236-37 (D. Nev. 2007), citing Washington v. CSC Credit Servs. Inc., 199 F.3d 263 (5th Cir. 2000) (finding individual consumer cannot pursue injunctive relief under § 1681n) with Andrews v. Trans Union Corp. Inc., 7 F. Supp.2d 1056, 1084 (C.D. Cal. 1998), aff'd in part, rev'd in part, 225 F.3d 1063 (9th Cir. 2000), rev'd, 534 U.S. 19 (2000) (finding injunctive relief available).  The Court need not resolve this dispute, however, as Valentine fails to respond to SafeRent's second argument, and fails to identify what injunctive relief he is entitled to in this case.  The Court agrees that, since the evidence shows the 2000 UD Action is no longer in his consumer credit file, the Court cannot enjoin SafeRent to remove the reference from his file.[18]  "There is no point in ordering an action that has already taken place."  Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 728 (10th Cir. 1997).  See also West Coast Home Builders, Inc. v. Aventis Cropscience USA Inc., Nos. C 04-2225 SI, C 04-2648 SI, 2009 WL 2612379, at *4 (N.D. Cal. Aug. 21, 2009) (finding injunctive relief claims "superfluous" where issue had already been addressed).

As the record does not suggest any injunctive relief that would be available to Valentine, and Valentine has not identified any in his Opposition, SafeRent's Motion for Summary Judgment as to the request for injunctive relief is GRANTED.

### 4.  Punitive Damages

Valentine also seeks to recover punitive damages under 15 U.S.C. § 1681n.  SafeRent moves for summary judgment on this issue solely based on its argument that it is entitled to summary judgment on the issue of whether it "willfully" violated each of the substantive provisions of the FCRA.  Valentine does not respond to this portion of the motion.  Nonetheless, in light of the Court's conclusion above that genuine issues of material fact remain as to whether SafeRent willfully violated the FCRA, the Court DENIES the motion for summary judgment as to the issue of punitive damages.

### IV. CONCLUSION

In accordance with the foregoing, Plaintiff's Motion for Partial Summary Judgment is DENIED in its entirety, and Defendant's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

---

[18]  While, in response to a willful violation of § 1681g, the Court could order the production of a free credit report, the Court has granted summary judgment in favor of Defendant on that claim.